IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIJAH THOMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRAD SWIFT, ET AL. | : | NO. 22-4052 |

<u>**MEMORANDUM**</u>

**Padova, J.**   February 1, 2023

      Plaintiff Elijah Thompson's pro se Amended Complaint asserts excessive force and due process claims pursuant to 42 U.S.C. § 1983 against Defendants Lieutenant Robert Mastnjak, Lieutenant Kimberly Johnson,[1] Correctional Officer Brad Swift, Correctional Officer Theodore Bolden, Correctional Officer John Doe #1, and Correctional Officer Jane Doe #1. Plaintiff's claims are based on events that allegedly occurred when he was a pretrial detainee at the Chester County Prison. Defendants have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, for Summary Judgment. For the reasons that follow, we grant the Motion in part and deny it in part.

I.   BACKGROUND

      The Amended Complaint alleges, in Exhibit 1(A) that, on November 24, 2020, Plaintiff, a pretrial detainee in the Chester County Prison, was released from his cell in cellblock K-odd to take a shower. (See Am. Compl., Ex. 1(A);[2] Id. ¶ 3.) As he approached the control room to obtain his shower supplies, Defendant Johnson opened the control room door, accompanied by

---

[1] The Amended Complaint identifies Johnson as a Sergeant, but Defendants state that she is a Lieutenant.

[2] Plaintiff describes Exhibit 1(A) as an affidavit. (Am. Compl. ¶ 9.) He also attaches to his Amended Complaint a Verification, in which he certifies "under penalty of perjury" that the matters set forth in the Exhibit are true. (Id. at 11 of 13.)

Defendants Swift and Bolden.  Johnson threatened to have Swift and Bolden "drag [Plaintiff's] ass back to [his] cell and fuck [him] up" if he took too long in the shower.  (Id., Ex. 1(A).)  Swift then swung the bag of shower supplies towards Plaintiff, and Plaintiff "instinctively swung" to defend himself and "inadvertently struck Swift."  (Id.)  Bolden then "began striking Plaintiff with closed fists," and "pushed [him] backwards into the dayroom area."  (Id.)  Bolden "continued to assault Plaintiff . . . while both Swift and Johnson cheered him on."  (Id.)  Defendant Jane Doe was present with a video camera, but Defendant Mastnjak "instructed her not to activate it."  (Id.)  After Plaintiff was subdued and handcuffed on the floor, Mastnjak placed his knee on Plaintiff's back and pulled the handcuffs upwards, "causing significant strain to [Plaintiff's] shoulders, wrists and back and impairing his ability to breath" so that Plaintiff lost consciousness.  (Id.)  "Immediately prior to losing consciousness, . . . John Doe . . . spit directly on the back of Plaintiff's head."  (Id.)

When Plaintiff regained consciousness, he was still on the floor.  He was escorted to medical by Johnson, Mastnjak, John Doe, and Jane Doe, all of whom intentionally struck Plaintiff's head on the doorways they passed through.  After being assessed by medical, Plaintiff was escorted to a cell in the RHU and his handcuffs were removed.  Thereafter, when Plaintiff was alone with Mastnjak in the cell, Mastnjak "removed Plaintiff's pants and undergarments," then "used one hand to roll Plaintiff on his sides and the other to spread his buttcheeks and lift and observe closely his penis and testicles."  (Id.)  When Plaintiff asked what Mastnjak was doing, Mastnjak "stopped and wordlessly exited the cell, leaving Plaintiff half-nude."  (Id.)

Plaintiff thereafter filed a Motion to Proceed In Forma Pauperis ("IFP Motion") and a Complaint, in which he asserted claims against the Defendant officers pursuant to 42 U.S.C. § 1983, alleging that the officers had used excessive force against him in violation of his rights under

the Eighth and Fourteenth Amendments. We issued an October 17, 2022 Order, which granted Plaintiff's IFP Motion and dismissed without prejudice his claims against Mastnjak, Swift, Bolden, and Jane and John Doe insofar as those claims sought relief against those officers in their official capacity pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but we permitted Plaintiff's individual capacity claims to proceed.[3] We also ordered the Clerk to serve written waiver requests on Defendants pursuant to Federal Rule of Civil Procedure 4(d). Following service of the waiver requests, but before they were returned, Plaintiff filed his Amended Complaint without leave to do so and reasserted his official capacity claims along with his individual capacity claims.

Defendants have now moved to dismiss Plaintiff's Amended Complaint for failure to state claims upon which relief can be granted or, in the alternative, for summary judgment in their favor based on evidence that they have attached to their Motion. Plaintiff has not responded to Defendants' Motion. Plaintiff has, however, filed a Motion for Appointment of Counsel as well as a Motion Requesting Leave for Limited John Doe Discovery, both of which we consider here.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However,

---

[3] Plaintiff had not asserted a claim against Johnson in her official capacity.

we "are not bound to accept as true a legal conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (second alteration in original)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555), cert. denied sub nom. Geness v. Pennsylvania, 210 L. Ed. 2d 833 (2021).

B. Rule 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

III.   DISCUSSION

  A.  Motion to Dismiss

Defendants argue in their Motion that the Amended Complaint should be dismissed because it fails to state a cognizable Fourteenth Amendment claim grounded on excessive force.[4] Specifically, they argue that the allegations of the Amended Complaint, even viewed in the light most favorable to Plaintiff, merely "describe a brief encounter between a correctional officer and an inmate on the [RHU] (for inmates who violate prison rules)" and do not give rise to an inference that Defendants' conduct "was for any other purpose than to prevent Plaintiff from continuing to

---

[4] Defendants also argue that Plaintiff has failed to allege a cognizable Eighth Amendment excessive force claim because the Amended Complaint does not allege facts supporting the elements of such a claim. (Defs.' Mem. at 9-12; see Am. Compl. ¶ 14 (citing Eighth Amendment as one basis for Plaintiff's claims.) However, as explained below, the Eighth Amendment simply does not apply here because Plaintiff was—and is—a pretrial detainee. Accordingly, we dismiss Plaintiff's claims insofar as they rely on the Eighth Amendment on that basis and proceed to consider Plaintiff's excessive force claims as only due process claims under the Fourteenth Amendment.

5

assault prison staff and from causing a disturbance and disruption of the prison's operations." (Defs.' Mem. at 13.) They alternatively argue that we should dismiss the claims that are asserted against Defendants in their official capacities because the Amended Complaint does not allege the elements of a Monell claim.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). Where, as here, an inmate is a pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. Kingsley v. Hendrickson, 576 U.S. 389, 397-98 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (quotation omitted)); Jacobs, 8 F.4th at 193-94 (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). To state a due process violation based on excessive force, a pretrial detainee must plausibly allege "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97. This is "an objective-reasonableness standard," which cannot be applied "'mechanically'" but rather, "requires 'careful attention to the facts and circumstances of each particular case.'" Jacobs, 8 F.4th at 194 (first quoting Kingsley, 576 U.S. at 397, then quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). In assessing the reasonableness of force used, we may consider the following non-exclusive factors: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396.)

Here, as noted above, the Amended Complaint alleges that after Plaintiff "instinctively swung . . . and inadvertently struck Swift" when attempting to obtain his shower supplies, Bolden "began striking Plaintiff with closed fists" while "Swift and Johnson cheered him on." (Am. Compl., Ex. 1(A).) The Amended Complaint further alleges that after Plaintiff was handcuffed and subdued, Mastnjak placed his knee on Plaintiff's back and pulled the handcuffs upwards, "impairing [Plaintiff's] ability to breath" and causing him to lose consciousness. (Id.) In addition, the Amended Complaint alleges that, on the way to the medical wing after the initial encounter, Johnson, Mastnjak, John Doe and Jane Doe, intentionally struck Plaintiff's head on doorways as they passed through them. (See id.) And, finally, the Amended Complaint alleges that Mastnjak aggressively strip-searched Plaintiff in his cell when the two were alone together.

Liberally reading the Amended Complaint in the light most favorable to the pro se Plaintiff, we conclude that it plausibly alleges that that Defendants purposely or knowingly used force against Plaintiff that was "objectively unreasonable." Kingsley, 576 U.S. at 397. We therefore reject Defendants' argument that the Amended Complaint fails to state a Fourteenth Amendment claim upon which relief can be granted.

On the other hand, we agree with Defendants that the Amended Complaint fails to allege cognizable claims against Defendants in their official capacities. As noted in our Order dismissing the official capacity claims asserted in Plaintiff's initial Complaint, official capacity claims against individuals are indistinguishable from claims against the entity that employs them, in this case Chester County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, are to be treated

7

as a suit against the entity." Id. (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. See Monell, 436 U.S. at 694; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

Here, the Amended Complaint, just like the original Complaint, contains no allegations concerning a specific custom or policy that caused Plaintiff's alleged harms. Accordingly, we grant Defendants' Motion insofar as it seeks dismissal of the official capacity claims in the Amended Complaint.

### B. Motion for Summary Judgment

Defendants argue, in the alternative, that they are entitled to summary judgment in their favor on Plaintiff's Fourteenth Amendment excessive force claim. In support of this request, Defendants submit a video of the alleged encounter with Plaintiff during his retrieval of his shower supplies, the incident reports that were filed in connection with that incident, and documentation of the disciplinary proceedings against Plaintiff that arose out of the incident. They argue that, based on this undisputed evidence, there is no genuine issue of material fact and they are entitled to qualified immunity on Plaintiff's claims.

"The doctrine of qualified immunity protects government officials 'from liability . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Our determination as to whether a government official is entitled to qualified immunity involves two inquiries: (1)

"whether the facts that [the] plaintiff has alleged or shown make out a violation of a constitutional right" and (2) whether that right "was clearly established at the time of [the] defendant's alleged misconduct." Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)); see also Jacobs, 8 F.4th at 193 (articulating the second question in the two-step analysis as "whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" (alteration in original) (quoting El v. City of Pittsburgh, 975 F.3d 327, 334 (3d Cir. 2020))). Critically, where summary judgment is sought on the basis of qualified immunity, we must ordinarily adopt the plaintiff's version of the facts "unless 'no reasonable jury could believe it.'" Jacobs, 8 F.4th at 192 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). However, "where there is a reliable video depicting the events in question, courts must not adopt a version of the facts that is 'blatantly contradicted' by the video footage." Id. (quoting Scott, 550 U.S. at 380).

Here, there is no question that Plaintiff, a pretrial detainee, had a clearly established due process right to be free from excessive force that amounts to punishment. See Kingsley, 576 U.S. at 397-98 (citation omitted). Defendants argue, however, that the undisputed facts in the record not only establish that Plaintiff's Fourteenth Amendment rights were not violated, but also establish that the circumstances were such that it would not have been clear to reasonable officers that their conduct was unlawful in the situation that Defendants confronted. They therefore contend that they are entitled to qualified immunity.

The evidence that Defendants have submitted shows the following. (Surveillance Video,

9

Defs.' Mem., Ex. B.)   On November 27, 2020,[5] Plaintiff approached an office in the prison in a visibly agitated state, yelling, pacing, and pointing aggressively at the door.  He was holding a towel in his hand.   When Swift opened the office door, Plaintiff, still visibly agitated, stepped up to him, toe-to-toe, in a threatening manner.  Swift handed Plaintiff a bag, apparently containing shower supplies.  Plaintiff stepped backwards, dropped his towel and the bag he had just been given, then lunged forward and punched Swift in the face.   Bolden quickly appeared from behind Swift and the two tackled Plaintiff, who struggled to stand and break free of the officers.   After an extended struggle, the two officers appeared to subdue Plaintiff, and Plaintiff became still.   Six additional officers then poured out of the office and all crowded around Plaintiff on the floor. Four more officers arrived and some of the officers simply milled around, watching the others who were continuing to hold down Plaintiff and were putting him in restraints.   At some point, an officer in a white shirt pulled another officer out of the crowd around Plaintiff and led him down an adjacent hallway, where the white-shirted officer appeared to scold the other officer, and he hit the wall next to the other officer's face.   The remaining officers pulled Plaintiff to his feet and dragged him out of the area, with Plaintiff apparently refusing to walk.   The officer who had been pulled out of the crowd was left behind.

Defendants argue that this video indisputably demonstrates that "[i]t was objectively reasonable for the Defendants to restrain Plaintiff and to protect themselves from Plaintiff's assault" and that, even if they used excessive force, a factfinder could only conclude that they had a "reasonable but mistaken belief that they needed to use that force to restrain Plaintiff to protect

---

[5] This is a different date than Plaintiff uses in his Amended Complaint.  However, the events shown on the video are so similar to those alleged in Plaintiff's Amended Complaint that we can only conclude that the date in Plaintiff's Amended Complaint was in error and that the video portrays some of the events at issue in this case.

10

the correctional officers from Plaintiff's assault." (Defs.' Mem. at 8-9.) Defendants therefore argue that they are shielded from liability based on qualified immunity.

Upon consideration of the undisputed video evidence, we find that the force that Swift and Bolden used to restrain Plaintiff after Plaintiff punched Swift was not excessive force that amounted to punishment such that it violated Plaintiff's Fourteenth Amendment rights. Indeed, it is apparent from the video that Plaintiff posed a safety risk to Swift and possibly Bolden, and that the force that Swift and Bolden knowingly used to restrain Plaintiff was objectively reasonable under all of the circumstances. While Plaintiff alleges and attests that Swift and Bolden hit him gratuitously, we cannot "adopt a version of the facts that is 'blatantly contradicted' by the video." Jacobs, 8 F.4th at 192 (quoting Scott, 550 U.S. at 380). Moreover, because the only claims against Swift and Bolden are Fourteenth Amendment excessive force claims arising out of their conduct in subduing Plaintiff, and the video shows those claims to be meritless, we conclude that summary judgment should be entered in their favor on Plaintiff's claims against them.

In contrast, the evidence that Defendants have submitted is either inconclusive concerning, or nonresponsive to, Plaintiff's claims against Mastnjak, Johnson, John Doe, and Jane Doe, for at least two reasons. First, we are not certain which individuals in the video are Mastnjak, Johnson, John Doe, and Jane Doe, and while the video makes clear that almost all of the officers depicted in it acted appropriately, there are issues of fact as to the conduct of the unidentified officer who was pulled from the crowd and apparently scolded by a superior.[6] Second, Plaintiff alleges that Mastnjak, Johnson, and the Does used excessive force against him while walking him to the

---

[6] Defendant has submitted one unsworn statement from an officer named Lane, who states that he stayed on K Block to relieve Swift, so that Swift could be evaluated by medical staff. (Defs.' Mem., Ex. A at 23 of 42.) However, in their Motion, Defendants say nothing specific about this statement and offer no explanation concerning the officer who was pulled aside by the white-shirted officer.

medical wing, conduct that was not captured on the submitted video, and also alleges that Mastnjak conducted an improper and abusive strip/cavity search, an allegation that Defendants deny, but do not cite any evidence to disprove. (See Defs.' Mem. at 11 n.4.)

Additionally, while Defendants argue that Plaintiff's allegations are unsubstantiated, it is Defendants who bear the burden of establishing that the undisputed facts support summary judgment in their favor. See Fed. R. Civ. P. 56(a) (requiring movant to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). Here, Defendants have not met that burden with regard to the claims against Mastnjak, Johnson, and the Does, because the evidence that they have submitted, construed in the light most favorable to Plaintiff, does not establish that they are entitled to qualified immunity. We further observe that because Defendants are seeking summary judgment against a pro se prisoner before discovery has commenced, it would be premature to fault Plaintiff for failing to have yet developed a factual record to substantiate his claims.

Accordingly, although we grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in favor of Swift and Bolden, we deny the Motion insofar as it seeks judgment in favor of the other Defendants.

### C. Motion for Limited John Doe Discovery

Simultaneous with filing his original Complaint in this action, and then again in November when he filed his Amended Complaint, Plaintiff filed a Motion "Requesting Leave for Limited John Doe Discovery." In that Motion, Plaintiff asks that Defendants reveal the identities of the John and Jane Doe Defendants referenced in his Complaint. In Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Defendants state that they have been unable to identify the individuals who Plaintiff names as John Doe #1 and Jane Doe #1 in the Amended

12

Complaint. (Defs.' Mem. at 1 n.1.) Defendants have, however, submitted multiple incident reports that were completed by prison staff in connection with the events at issue, and those reports identify a number of officers. (See Defs.' Mem., Ex. A.) M.K. Taylor and D. Carroll are identified as two officers who responded to the disturbance and then escorted Plaintiff to the medical unit. (Id. at 21, 28 of 42.) Three other individuals, "Cpl. Nieves," "L'O' Nelson," and "CO1Noel" state that they were present during the disturbance and suggest, without explicitly stating, that they also escorted Plaintiff to the medical unit. (Id. at 24-25, 27 of 42.) Another incident report reflects that the "reporting officer" assisted in escorting Plaintiff to medical, but it does not identify that reporting officer by name.[7] (Id. at 26 of 42.) Defendants have also submitted an "Incident Citation," which lists the staff involved in the November 27, 2020 incident as Mastnjak, Nieves, Whiteside, Carroll, Lane, Johnson, Sharp, Nelson, and Noel. (Id. at 37 of 42.)

The exhibits that Defendants have produced in connection with their Motion therefore give Plaintiff considerable information about the individuals who may be the Jane and John Does whom Plaintiff seeks to identify. However, that information appears incomplete, at least insofar as it does not provide each individual's first name and does not provide clear information as to who escorted Plaintiff to medical. We will therefore grant Plaintiff's Motion Requesting Leave for Limited John Doe Discovery and order Defendants to provide Plaintiff with a complete list of officers who responded to the disturbance at issue, as well as a complete list of officers who escorted Plaintiff to the medical unit. These lists should identify the officers by first name, last

---

[7] The author of this report is M. Lane and the report may be his statement. However, there is another incident report in the record that is clearly identified as Lane's statement and that was given approximately one hour prior. (See id. at 23 of 42.) Accordingly, the reporting officer in the later report is unclear.

13

name, and rank.

    **D.  Motion to Appoint Counsel**

Also simultaneous with filing his original Complaint in this action, and then again in November when he filed his Amended Complaint, Plaintiff filed a Motion to Appoint Counsel. "Civil litigants have no constitutional or statutory right to appointed counsel." Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019) (citing Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002)). However, 28 U.S.C. § 1915 provides that "[t]he court may request an attorney to represent any person unable to afford counsel." Id. (alteration in original) (quoting 28 U.S.C. § 1915(e)(1)). The United States Court of Appeals for the Third Circuit has "provided district courts with a set of general standards for appointing counsel." Id. (quoting Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)). We first determine whether the plaintiff's claim "has some arguable merit." Montgomery, 294 F.3d at 499 (citations omitted). If so, we consider the following non-exhaustive factors discussed by the Third Circuit in Tabron v. Grace:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses; [and]
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

Houser, 927 F.3d at 697 (alteration in original) (quoting Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997)).

Applying these factors here, we first observe that the threshold inquiry has been satisfied because certain of Plaintiff's Fourteenth Amendment excessive force claims have survived Defendants' motions to dismiss and for summary judgment and, thus, have arguable merit. Turning to the six additional Tabron factors, Plaintiff asserts in his Motion to Appoint Counsel

that his imprisonment and long-term administrative segregation will limit his ability to litigate and present his case. He elaborates that he has been in long-term segregation for more than 24 consecutive months, and he states that this has hindered his ability to obtain a lawyer to represent him. While the legal issues in this case do not appear to be complex, Plaintiff states that he has no access to the law library and has no knowledge of the law. Moreover, the factual issues in the case will require investigation and the case may ultimately rest on credibility determinations. In this regard, we note that Defendants' early filing of a summary judgment motion, before they have even filed an Answer and before any formal discovery has occurred, only serves to highlight Plaintiff's need for assistance in litigating his case. Finally, Plaintiff represents that he is not mentally competent to try this case. (Pl.'s Mot. to Appoint Counsel ¶ 5.)

Upon consideration of these circumstances, we conclude that the Tabron factors weigh in favor of granting the Motion to Appoint Counsel, at least insofar as we will make the case available for review and selection by volunteer attorneys on the Prisoner Civil Rights Panel. We emphasize that referring this case to the Prisoner Civil Rights Panel does not ensure the appointment of counsel. Rather, it remains possible that no panel attorney will volunteer to take this case and that, as a result, no counsel will be appointed to represent Plaintiff after invocation of the Panel procedures. Nevertheless, we find it appropriate to request that an attorney volunteer to represent Plaintiff in this action.

### III. CONCLUSION

For the foregoing reasons, we dismiss Plaintiff's official capacity and Eighth Amendment claims for failure to state a claim, and we also grant summary judgment in favor of Defendants Swift and Bolden only. In all other respects, we deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. At the same time, we grant Plaintiff's Motion Requesting

Leave for Limited John Doe Discovery as well as his Motion to Appoint Counsel.  An appropriate Order follows.

                                                              BY THE COURT:

                                                              /s/ John R. Padova, J.

                                                              John R. Padova, J.